CLARENCE E. McMANUS, Judge.
 

 12This appeal concerns a claim for damages by Dr. Janos Varos against Damien Knight, the Bank of Louisiana, and Charley Dorand & Dorand Consulting Services resulting from the unauthorized conversion of funds by Knight from Dr. Voros’ Bank of Louisiana accounts. The Bank of Louisiana now files this appeal from the trial court’s judgment in favor of Dr. Voros in the amount of $22,000.00, finding the Bank to be 50% at fault, and thus ordering the bank to pay $11,000 to Dr. Voros.
 

 For the following reasons, we amend the judgment of the trial court, in part, and affirm the judgment as amended.
 

 STATEMENT OF THE CASE
 

 Janos Voros, M.D. is the sole shareholder, director and officer of Janos Voros, MD, A Medical Corporation. In approximately 1983, Dr. Voros hired Damien Knight, who eventually became his officer manager and handled his financial and banking affairs. Dr. Voros also had an accountant, Charley Dorand of Dorand Consulting Services, that reviewed bank statements for reconciliation and performed other necessary accounting services.
 

 
 *1085
 
 Dr. Voros, with the assistance of Knight, opened bank accounts at Bank of Louisiana in 2000, including a personal money mai'ket account and a corporate checking account for his medical corporation. Sharon Welch, a patient of Dr. Voros, was the branch manager of the Lapalco location of the Bank of Louisiana. |3She processed and opened the bank accounts for Dr. Vo-ros. The signature cards on both the personal money market account and the corporate checking account included only Dr. Voros’ signature. Knight was not listed on the signature card for either account.
 

 Knight was responsible for making deposits for Dr. Voros and paying all expenses due. Dr. Voros would sign blank checks for Knight to use to pay the expenses. Unknown to Dr. Voros at the time, Knight was using some of the blank checks he signed to pay her own personal bills. In addition, Knight made telephone transfers from Dr. Voros’ personal money market account to his corporate account. Knight would speak with Welch at Bank of Louisiana and request these transfers. These transfers were made without Dr. Voros’ knowledge.
 

 Dr. Voros discovered the problem with the accounts and unauthorized checks and transfers by Knight after his wife pointed out to him that the credit card debt was high and the bills were not being paid. Dr. Voros contacted Welch at the bank and she helped him review the accounts and they discovered that Knight had stolen money from his accounts using the signed blank checks to pay her personal bills and by making unauthorized transfers from Dr. Voros’ personal account at Bank of Louisiana.
 

 Criminal charges were brought against Knight. On June 15, 2004, she pled guilty to theft over $500. She was sentenced to imprisonment at hard labor for 3 years. That sentence was suspended and she was placed on five years active probation. She was also ordered to pay costs and ordered to pay a total of $190,000.00 in restitution to Dr. Voros.
 

 On September 27, 2002, Dr. Voros, individually, and on behalf of his medical corporation, filed a Petition for Damages against his accountant, Charley Dorand, individually, and Dorand Consulting Services. Dr. Voros alleged Dorand |,,was negligent in balancing accounts, preparing ledgers and failing to detect irregularities to prevent the systematic removal of funds by Knight.
 

 On June 7, 2005, Dr. Voros filed a First Amended Petition for Damages naming Knight and Bank of Louisiana as defendants. Dr. Voros alleged Knight purposefully converted his money for her own use by paying credit card bills with his funds and taking cash directly from his bank accounts. Dr. Voros alleged the Bank of Louisiana negligently permitted Knight to transfer funds from Dr. Voros’ individual account to his corporate account without appropriate authority. In a second amending petition, Dr. Voros alleged the Bank of Louisiana permitted Knight to make the transfers by telephone.
 

 On April 7, 2006, Bank of Louisiana filed a peremptory exception of prescription arguing the amended petition naming it as a defendant was filed more than three years after the original petition. The trial court denied this exception July 19, 2006.
 

 Trial was held on January 10, 2008 with regards to Dr. Voros’ claim against Bank of Louisiana for reimbursement of $22,000.00 in losses resulting from the unauthorized telephone transfers, which were not covered by the order of restitution in the criminal action against Knight. On March 5, 2008, the trial court rendered judgment in favor of Dr. Voros for $22,000.00. However, the trial court also found Dr. Voros to be 50% at fault for the lack of due diligence in the supervision or
 
 *1086
 
 review of his own financial accounts. Therefore, the trial court reduced his award to $11,000.00 in accordance with the finding of comparative fault.
 

 Bank of Louisiana now appeals the trial court’s judgment arguing four assignments of error: 1) the trial court erred in failing to find that the negligence claims against Bank of Louisiana had prescribed and failed to rule on this matter, |s2) the trial court erred in failing to find that Dr. Vo-ros’ claims were barred as a matter of law by La. R.S. 10:3-405 and La. R.S. 10:3-406, 3) the trial court erred in failing to apply the legal principles enunciated in
 
 Black v. Whitney National Bank,
 
 618 So.2d 509 (4th Cir.1993), and 4) the trial court erred in failing to apply fault to either Charley Dorand or Damien Knight. For the reasons which follow, we amend the trial court’s judgment in part and affirm the judgment as amended.
 

 DISCUSSION
 

 First, Bank of Louisiana claims the trial court erred in failing to find that the negligent claims against the Bank had prescribed. Bank of Louisiana further argues that, despite considerable focus on the issue of prescription, there was no ruling made by the trial court.
 

 In opposition, Dr. Voros argues the exception of prescription was heard and denied by the trial court. We agree with Dr. Voros and find the issue of prescription was heard and decided by the trial court prior to the commencement of trial. Bank of Louisiana filed the peremptory exception of prescription on April 7, 2006. The trial court heard arguments on the exception and it was denied on July 19, 2006. Bank of Louisiana argued the issue of prescription again at the beginning of the trial, although no formal written exception was filed at that time. We find that since the trial court did rule on the exception of prescription prior to trial, a second ruling in the judgment following trial was not necessary. Further, we note that following the trial court’s July 19, 2006 denial of its peremptory exception of prescription, Bank of Louisiana did not file an application for supervisory writs with this Court.
 

 Even though we find the Bank of Louisiana is incorrect in its assertion that the trial court failed to rule on its exception of prescription, we will address the merits of the exception and consider the Bank of Louisiana’s assignment of error to | ^address the trial court’s 2006 denial of the exception. In its original exception, the Bank of Louisiana argued the alleged negligent acts by the Bank of Louisiana that Dr. Voros complained of took place between February 21, 2002 and July 12, 2002. The First Amended Petition filed by Dr. Voros adding Bank of Louisiana as a defendant was filed June 6, 2005. Therefore, Bank of Louisiana argued the amended petition containing Dr. Voros’ claims against it was filed more than one year after the last alleged act of negligence and the claim was prescribed. Bank of Louisiana further argued Dr. Voros complained that Bank of Louisiana’s independent negligence caused his damages and this negligence had nothing to do with the actions of Knight. Therefore, Bank of Louisiana argued the claims against it were prescribed.
 

 In opposition to the exception of prescription, Dr. Voros argued in the trial court that Bank of Louisiana and Knight are solidary obligors because the negligence and actions of the bank were extri-cably intertwined with the actions of Knight. Dr. Voros further argued the applicable prescriptive period for the claims against Knight is ten years under La. C.C. art. 3499 because the action is a personal action. Further, Dr. Voros argued in accordance with La. C.C. art. 3503, when
 
 *1087
 
 prescription is interrupted against a soli-dary obligor, the interruption is effective against all solidary obligors and their successors.
 

 The trial court denied the exception without reasons. We find the trial court correctly denied the exception. We agree with Dr. Voros and find that Knight and Bank of Louisiana are solidary obligors in this action. Dr. Voros’ claim against Knight is a personal action and is governed by La. C.C. art. 3499 which states “[ujnless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.” Therefore, a liberative prescription of ten years applies to the claims against Knight and Dr. Vo-ros’ amending petition |7naming her as a defendant was timely filed. Further, La. C.C. art. 1793 provides that “[a]ny act that interrupts prescription for one of the soli-dary obligees benefits all the others.”
 

 Since we find Knight and Bank of Louisiana to be solidary obligors in this matter, and the ten year liberative prescription applies to Dr. Voros’ claim against Knight, the claim against Bank of Louisiana was also timely filed. Thus, the trial court correctly denied the exception of prescription.
 

 Second, Bank of Louisiana argues the trial court should have applied LSAR.S. 10:3-405 and LSA-R.S. 10:3-406. Bank of Louisiana argues these statutes apply and bar the claims against it by Dr. Voros. Bank of Louisiana argues La. R.S. 10:3-405 and 406 dictate that an employer who fails to exercise ordinary care in connection with defalcations by an employee is barred from making any claims against a financial institution which handles the employer’s bank accounts.
 

 In opposition, Dr. Voros argues these statutes deal only with negotiable instruments, and do not apply to the unauthorized transfer of funds from the one account to another. Dr. Voros argues there is no instrument related to the account that would trigger an obligation under these statutes on the part of the account holder. Dr. Voros contends these statutes concerning negotiable instruments between a bank and a depositor relate only to money within an account that is demanded by a written instrument from that account and has nothing to do with a verbal and unauthorized telephone transfer of funds by a non-customer.
 

 Chapter 3 of Title 10 of the Louisiana Revised Statutes specifically refers to and is titled “Negotiable Instruments”. Further, the language of both statutes cited by Bank of Louisiana refers to defalcations made by “instrument”. Therefore, we agree with Dr. Voros and find these statutes apply only to acts by an employee dealing with negotiable | ¡^instruments. Since this ease does not deal with negotiable instruments, but instead involves unauthorized telephone transfers of funds from an account, we find these statutes inapplicable in this case. Therefore, we find Bank of Louisiana’s second assignment of error lacks merit.
 

 Third, Bank of Louisiana argues the trial court should have applied the case of
 
 Black v. Whitney National Bank,
 
 618 So.2d 509 (4th Cir.1993) and found that Dr. Voros is barred from making a claim against Bank of Louisiana. Bank of Louisiana argues Dr. Voros, like the plaintiff in
 
 Black,
 
 did not exercise supervision or review of his bank statements or the actions of Knight, therefore, he cannot bring a claim against the bank.
 

 In opposition, Dr. Voros argues this case concerns negotiable instruments, unlike the unauthorized telephone transfers made by Knight. Thus, Dr. Voros contends this case does not apply and does not bar his claim against Bank of Louisiana.
 

 A review of
 
 Black
 
 indicates the plaintiffs claims in that case center around the
 
 *1088
 
 acts of an employee/office manager who forged the employer/physician’s signature on checks payable to the physician. These acts clearly involved the use of negotiable instruments, unlike the telephone transfers that took place in the instant case.
 

 Additionally, we find
 
 Black
 
 is distinguishable from the instant case because in
 
 Black,
 
 the employee was given much more authority with regards to the employers bank accounts. The employee and the employer in
 
 Black
 
 had joint bank accounts and the employee was a signature on the employer’s account. Therefore, as noted by the Fourth Circuit in that case, this authority held the employee out to the banking community as having the authority to engage in the questionable transactions.
 

 lain the instant case, Knight was given no such authority. She was not a signature on Dr. Voros’ accounts with Bank of Louisiana. The claims in the instant case stem from Bank of Louisiana’s allowance of the transfers without authority from a signature on the account.
 
 Black
 
 only addresses the employee’s forging of the employer’s signature on checks payable to the employer.
 

 For the reasons discussed above, we find
 
 Black
 
 to be distinguishable from this instant case and find Bank of Louisiana’s third assignment of error lacks merit.
 

 Finally, Bank of Louisiana argues the trial court erred in failing to apply fault to either Dorand or Knight. Bank of Louisiana argues Dorand should have been assessed some fault because she was responsible for evaluating the cheeking accounts and failed to catch the defalcations. Bank of Louisiana also argues the trial court should have assessed some fault to Knight since she actually stole the money. Bank of Louisiana contends Knight has offered no defense and has admitted she was the proximate cause of Dr. Voros’ losses.
 

 Dr. Voros argues in opposition that the fault of the co-defendants Dorand and Knight was not an issue before the trial court and should not be addressed by this Court. Dr. Voros argues there were only two parties to the contract between the bank and Dr. Voros and there is no way the other defendants breached its terms. Dr. Voros goes on to argue the trial court’s judgment should be affirmed and not disturbed, and specifically points out that he has chosen not to appeal the trial court’s judgment which found him to be 50% at fault for the losses he sustained.
 

 After reviewing the record and trial testimonies presented, we agree with the trial court that Dr. Voros was partially at fault for the losses he sustained. Additionally, we agree with the trial court that Bank of Louisiana was also at fault. However, we agree with Bank of Louisiana and find that some fault must be [ U)assessed to Knight, the individual that actually stole the funds and initiated the unauthorized telephone transfers. We do not find the evidence and testimonies presented at trial support an assessment of fault on behalf of Do-rand.
 

 First, with regards to the fault of Bank of Louisiana, we agree with the trial court that the bank was at fault for allowing Knight to make the transfers by telephone that resulted in her stealing funds from Dr. Voros.
 

 Welch, the branch manager, handled the unauthorized transfers on behalf of the bank and she testified at the trial of this matter. She testified that Bank of Louisiana is a small bank and she knew 90% of her customers. She further testified that if she knew a customer, she would make a transfer for them if they called and requested it. She stated she complied with the “know your customer rule”, which she claimed was contained in bank regulation literature. Welch testified that she knew
 
 *1089
 
 Dr. Voros and had set up both his corporate and personal accounts with Bank of Louisiana. Welch further stated that she knew Knight worked for Dr. Voros and she felt she had expressed authority to permit Knight to request these transfers on Dr. Voros’ accounts because Knight “handled the office.” Welch testified that she had not talked directly to Dr. Voros concerning Knight’s requests, but Knight handled all his affairs, so this led her to believe Knight had the authority to do the transfers. However, Welch also testified that she knew Knight was not a signatory on Dr. Voros’ personal or corporate accounts and knew Knight was not an officer, director, or shareholder of Dr. Voros’ corporation.
 

 Additionally, Welch did not get authority from Dr. Voros for Knight to make the transfers, nor did she call him for approval prior to completing the transfers. Welch also did not call Dr. Voros after the transfers, instead she completed the written debit advices and mailed a copy to Dr. Voros’ office. The | n original debit advices were sent in the monthly bank statements. Ultimately, Welch testified she would not have made the transfers if she had not personally known Knight.
 

 Dr. Voros testified that he never added Knight’s name to any accounts, never provided her or the bank with the express authority or written authority, for Knight to access the accounts. He further testified that he never told Knight or Welch that Knight was authorized to make transfers. Additionally, Dr. Voros never told anyone at Bank of Louisiana that his advance approval would not be needed for employees to make transfers.
 

 At trial, Dr. Voros also presented the testimony of a banking expert, Clayton Domingue, who was a former bank examiner for the Louisiana Office of Financial Institutions. He testified that transfers like the ones Welch made for Knight, must be made by the owner or beneficiary and no other. He further testified that he “know-your-customer rule” which Welch stated she relied upon, was a published regulation by the federal agencies that regulate banks, however, he believed this rule had been abrogated by new banking laws, especially after September 11th and the passage of the Patriot Act. He testified that banks have moved to a customer identification program. Domingue further explained that authority to make such transfers must be in writing and this writing must delegate authority to the non-owner in order to make the transfer legal. Do-mingue testified that transfers by telephone by a non-account holder who was not listed on the signature card were neither customary nor ordinary and did not comply with law. He also testified that there were no internal procedures in place at the Bank of Louisiana for transfers by telephone of an account holder’s funds by a non-customer.
 

 Based on the testimonies presented at trial, we find that Welch, working on behalf of Bank of Louisiana, did not have the authority to make the telephone 112transfers requested by Knight. Therefore, Welch’s actions allowed Knight to steal the funds from Dr. Voros’ account at Bank of Louisiana. Thus, we agree with the trial court and find Bank of Louisiana to be at fault in this matter.
 

 We further agree with the trial court that Dr. Voros is partially at fault for his lack of due diligence in the supervision and/or review of his financial accounts. At trial, Dr. Voros testified regarding Knight’s role in the handling of his financial affairs. He testified that Knight would go to Bank of Louisiana to make deposits in his accounts. Further, Knight would come to him and tell him certain bills needed to be paid. He would sign blank checks and Knight would fill in the
 
 *1090
 
 payee and amount. Dr. Voros testified that Knight opened most of the mail at his office, including the bank statements. Dr. Voros stated he never opened or reconciled a bank statement. He thought Knight sent the statements directly to his accountant, Charley Dorand.
 

 In addition, Dr. Voros testified that his wife had warned him for years that she suspected Knight was stealing funds. But, he did not personally take any steps to check his accounts because he was under the impression that Dorand was checking all his accounts and she had assured him everything was fíne. Ultimately, Dr. Vo-ros testified at trial that he thinks he probably has some responsibility in taking care of his business and he should have been more careful. He agreed that part of the losses were his responsibility.
 

 Based on the above, we find Dr. Voros did not properly supervise or review his own financial accounts. If he had reviewed the monthly bank statements and seen the debit advices, Dr. Voros would have known immediately that Knight was making transfers from his personal account that he had not authorized. Further, if Dr. Voros had discovered these unauthorized transfers immediately after the first one occurred, he could have taken action to stop Knight and alert the bank as to the | ^wrongdoing. Therefore, we agree with the trial court that Dr. Voros was partially at fault for his lack of due diligence in supervising his financial accounts.
 

 Unlike the trial court, we also attribute some fault to Knight, who actually stole the money by initiating these transfers. At trial, Knight admitted she made the telephone transfers and then used the funds to pay her personal bills. After criminal charges were brought against her, she pled guilty to theft over $500.
 

 Since Knight actually initiated the unauthorized transfers and ultimately took the money from Dr. Voros, we find her to be 25 % at fault for her role in this matter. Further, we find Dr. Voros to be 25% at fault for his failure to review his financial accounts and discover the actions of Knight. And finally, we agree with the trial court’s assessment of fault as to Bank of Louisiana and find it to be 50% at fault for its role in allowing Knight to make the unauthorized transfers by telephone. Ultimately, Knight would not have been able to take these funds from Dr. Voros if Bank of Louisiana had never allowed her to make the telephone transfers. Bank of Louisiana failed to protect its account holder, Dr. Voros, by requiring the transfers to be made by an account holder only, or by requiring written authority from Dr. Voros before allowing the transfers by Knight. Therefore, we agree with the trial court’s 50% assessment of fault for Bank of Louisiana.
 

 Accordingly, we amend the trial court’s judgment to reflect that Dr. Voros is 25 % at fault, Knight is 25% at fault for their respective roles in this theft matter. We affirm the trial court’s judgment finding Bank of Louisiana to be 50% at fault and affirm the trial court’s award of $22,000.00 to Dr. Voros for reimbursement of funds stolen by Knight and not covered by restitution in the criminal matter. Dr. Voros proceeded to trial in this matter against only Bank of Louisiana. Therefore, we order judgment in favor of Dr. Voros and against Bank of Louisiana in the 114amount of $11,000.00, which reflects Bank of Louisiana’s 50% fault assessment. As amended, we affirm the trial court’s judgment.
 

 JUDGMENT AMENDED; JUDGMENT AFFIRMED AS AMENDED.