MURPHY, J.
| ] Plaintiffs, David Ducote, Avery Interests, L.L.C., Jebaco, Inc., and Iberville Designs,[1] (hereinafter collectively referred to as plaintiffs), have appealed the grant of summary judgment in favor of Whitney National Bank (hereinafter referred to as Whitney). For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On July 25, 2014, plaintiffs filed suit against Whitney and Ducote’s former employee, Michelle Freytag,[2] (hereinafter Freytag), alleging that Freytag, in her position as Dueote’s executive assistant, had obtained fraudulent credit cards from Whitney on plaintiffs’ accounts, made personal charges on the cards, and transferred funds from plaintiffs’ accounts to pay the balance on these credit cards. The petition alleged that plaintiffs were not responsible for the charges because the contract on the credit card agreements was null, or alternatively that the credit card agreements should be rescinded because of the fraud committed by Freytag. The petition further alleged that Freytag could not have accomplished this theft without the assistance of Whitney, which failed to follow established procedures and facilitated Freytag’s theft, and was liable in solido with Freytag. The plaintiffs prayed for rescission or nullification of all contracts on the credit cards and restoring the parties “to the situation that existed before the purported contract was made” including but not limited to the “return of all amounts paid” to Whitney for charges made by Freytag, including associated interest and fees, plus reasonable damages, attorney fees and judicial interest.
12Whitney denied the allegations in the petition and further alleged that plaintiffs’ claims are barred by La. R.S. 10:4 and 4A, and by the deposit account agreements between plaintiffs and Whitney. Whitney also claimed that plaintiffs’ actions and/or inactions gave Freytag express or implied authority to engage in the activities alleged in plaintiffs’ petition. Whitney filed a reconventional demand seeking payment for sums due from plaintiffs on these same credit cards.
On January 12, 2015, Whitney filed a Motion for Partial Summary Judgment seeking to dismiss plaintiffs’ claims of negligence, rescission, and fraud that seek recovery of funds transfers from Whitney. In this motion, Whitney argued that Chapter 4A of the Uniform Commercial Code *731 (UCC), which was adopted by Louisiana, preempts plaintiffs’ non-UCC claims to recover these funds. The trial court denied the motion and Whitney sought review from this Court. This Court denied the writ application because Whitney did not include evidence to demonstrate that the accounts at issue were commercial accounts, stating that if the funds transfers were “consumer” funds, then the Electronic Funds Transfer Act (hereinafter EFTA) would apply rather than Chapter 4A. Whitney v. Ducote, 15-256 (La. App. 5 Cir. 4/24/15) (unpublished writ disposition).
On December 15, 2015, Whitney filed another Motion for Summary Judgment arguing that it was entitled to summary judgment because the UCC displaces plaintiffs’ claims, the claims are barred under the terms of the deposit account agreement and La. R.S. 10:4-406 due to plaintiffs’ failure to timely report the items as unauthorized, and that the claims are barred by apparent authority. Plaintiffs opposed this motion and in addition filed their own Motion for Partial Summary Judgment alleging that plaintiffs’ claims arise from fraud and negligence in the issuance of credit cards and subsequent concealment activity on the credit card accounts. Plaintiffs argued that the transfers of funds from the plaintiffs’ | ¡¡accounts are incidental to or subsequent to the fraudulent and negligent conduct, therefore the UCC is not applicable to these claims.
At the hearing on the competing motions for summary judgment, Whitney argued that according to the deposit account agreement, any claim is barred that relates to an unauthorized transfer of funds if it is not reported within 60 days of the bank statement reflecting the transfer.[3] Whitney pointed out that each transfer was reflected on each monthly bank statement provided to plaintiffs. Whitney further argued that La. R.S. 10:4-406 bars any claim against a bank for unauthorized items that are on the bank statement that the customer does not timely report to the bank. Whitney also argued that plaintiffs remedy was solely under the UCC provisions which have been adopted by Louisiana and the credit card agreements could not be rescinded under other provisions of Louisiana law.
In response, plaintiffs argued that their action is not barred by the account agreements because credit card agreements are not subject to the deposit account agreements. Plaintiffs further argued that whether or not they were reasonable in not reporting the fraudulent transactions is a “fact question,” which should not be decided on summary judgment. Plaintiffs also contend that their remedy of rescission, which is unique to Louisiana, is not inconsistent with the UCC, and as such these claims are not barred by the UCC.
At the conclusion of the hearing, the trial judge took the matter under advisement. On January 27, 2016, the trial court denied Whitney’s Motion for Partial Summary Judgment with respect to apparent authority and granted the motion “in all other respects.” Pursuant to this Court’s order, the trial court ^amended the judgment to state that Whitney’s Motion for Summary Judgment regarding UCC dis *732 placing plaintiffs’ claims for rescission, negligence, and fraud against Whitney are dismissed with prejudice because plaintiffs’ claims are barred under the terms of their account agreement and La. R.S. 10:4-406. Plaintiffs’ Motion for Partial Summary Judgment was denied. On February 19, 2016, the trial court designated the judgment granting Whitney’s Motion for Partial Summary Judgment as a final appeal-able judgment pursuant to La. C.C.P. Art. 1915B. This timely appeal followed.
LAW AND DISCUSSION
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact that that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966(A)(3). Under La. C.C.P. Art. 966(D)(1), the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. C.C.P. Art. 966(D)(1). The nonmoving party must then produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Babino v. Jefferson Transit, 12-468 (La.App. 5 Cir. 2/21/13), 110 So.3d 1123, 1125.
Appellate courts review the ruling on a motion for summary judgment de novo applying the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Schultz v. Guoth, 10-343 (La. 1/19/11), 57 So.3d 1002, 1005.
IsThe decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Muller v. Carrier Corp., 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883, 885.
Louisiana has enacted all of the Articles of the model Uniform Commercial Code, except Articles 2, pertaining to sales, and 2A pertaining to leases. The UCC is codified in La. R.S. 10:1-101 et seq. La. R.S. 10:1-103 states:
(a) This Title shall be liberally construed and applied to promote its underlying purposes and policies, which are:
(1) to simplify, clarify, and modernize the law governing commercial transactions;
(2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and
(3) to promote uniformity of the law among the various jurisdictions.
(b) Unless displaced by the particular provisions of this Title, the other laws of Louisiana supplement its provisions.
The official comments under this statute state in pertinent part:
2. Applicability of supplemental principles of law. Subsection (b) states the basic relationship of the Uniform Commercial Code to supplemental bodies of law. The Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement it provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while *733 principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies. (Emphasis added.)
The language of subsection (b) is intended to reflect both the concept of supplementation and the concept of preemption. Some courts, however, had difficulty in applying the identical language of former Section 1-108 to determine when other law appropriately may |r,be applied to supplement the Uniform Commercial Code, and when that law has been displaced by the Code. Some decisions applied other law in situations in which that application, while not inconsistent with the text of any particular provision of the Uniform Commercial Code, clearly was inconsistent with the underlying purposes and policies reflected in the relevant provisions of the Code. See, e.g., Sheerbonnet, Ltd. v. American Express Bank, Ltd., 951 F.Supp. 403 (S.D.N.Y. 1995). In part, this difficulty arose from Comment 1 to former Section 1-103, which stated that this section indicates the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act. The “explicitly displaced” language of that Comment did not accurately reflect the proper scope of Uniform Commercial Code preemption, which extends to displacement of other law that is inconsistent with the purposes and policies of the Uniform Commercial Code, as well as with its text. (Emphasis added.)
In its motion for summary judgment, Whitney argues that plaintiffs’ claims are barred under the terms of the account agreement and La. R.S. 10:4-406 due to plaintiffs’ failure to timely report the items as unauthorized, and that the UCC displaces plaintiffs’ claims for rescission, negligence and fraud.
Plaintiffs claim that Freytag fraudulently obtained a credit card from Whitney in the name of David Ducote and was issued a credit card in her name as an authorized user on this account. Plaintiffs further claim that Freytag fraudulently obtained a credit card fl’om Whitney in her name as an alleged authorized user on Avery Interests, L.L.C. credit card account. Plaintiffs also allege that Freytag made charges on credit card accounts belonging to Jebaco, Inc., and Iberville Designs. Freytag initially paid the charges on these credit cards with checks written on Ducote’s bank account that were signed by Ducote. Later payments on the credit card accounts were made with funds transferred from the bank account to the credit card account. This was accomplished by Freytag either calling or e-mailing Whitney employees to request the credit card balance be paid from the bank account. When this was done, Whitney would prepare a “debit memo” which indicated Freytag initiated this transaction and listed each credit card being paid by the credit card name, number, and amount paid on each card. Both 17parties agree that a copy of this debit memo was included with the monthly bank statements that were sent to plaintiffs by Whitney.
The monthly bank statements were reviewed by Ducote’s “CFO,” Yolande Bernard. Whitney produced documents obtained from plaintiffs in discovery which *734 indicate that Ms. Bernard questioned Freytag regarding payment of the ci’edit card bills from the bank account on numerous occasions. These documents also indicate that Ms. Bernard marked certain charges on the credit card statements and questioned Freytag about those charges. However, Ms, Bernard, nor anyone on plaintiffs’ behalf, ever contacted Whitney regarding any of the charges on the credit cards or payments of the card balances from the bank account.
La. 10:4-401 (a)(9) defines item as (9) “an instrument or a promise or order to pay money handled by a bank for collection or payment. The term does not include a payment order governed by Chapter 4A or a credit or debit card slip.” The comments under this section state: “Item” is defined broadly to include an instrument, as defined in Section 3-104, as well as promises or orders that may not be within the definition of “instrument.” Thus, the funds that were transferred by Freytag via “debit memo” are items under the UCC. Accordingly, these funds transfers are governed by the UCC.
La. 10:4-406 places a duty on a bank customer to examine the bank statement and notify the bank of any unauthorized transactions. La. 10:4-406(c) provides:
If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
1RLa. R. S. 10:4-406(d)(2) embodies the defense known generally as the “same wrongdoer” rule. This rule “imposes on the customer the risk of loss on all subsequent forgeries by the same wrongdoer after the customer had a reasonable time to detect an initial forgery if the bank has honored subsequent forgeries prior to notice.” Marx v. Whitney Nat’l Bank, 97-3213 (La. 7/8/98), 713 So.2d 1142, 1145. In Marx, the Supreme Court found that because the plaintiff did not review and notify the defendant bank of the initial forgeries appearing in a bank statement within thirty days of receipt of that statement, he was “precluded” from asserting causes of action against the bank for all subsequent forgeries by the same unauthorized person. Id. at 1147.
La. R.S. 10:4-406(f) imposes an absolute bar to any customer claim based upon an unauthorized transfer not reported within one year after the bank statement has been made available. This period may be shortened by the bank account agreement—in this case it was shortened to sixty days. This provision applies “without regard to care or lack of care of either the customer or the bank.” Id.
Louisiana courts have strictly enforced the provision of La. R.S. 10:4-406. In Costello v. Citibank (S. Dakota), N.A., 45,518 (La.App. 2 Cir. 9/29/10), 48 So.3d 1108, 1113, the court barred all claims sounding in breach of contract that related to the payment of negotiable instruments stating that because plaintiffs “breached their duty to examine and reconcile bank statements” their claims have “prescribed under La. R.S. 10;4-406(f).” In ASP Enterprises, Inc. v. Guillory, 08-2235 (La.App. 1 Cir. 9/11/09), 22 So.3d 964, 979, the court held that all claims related to check forgeries were barred due to plaintiffs failure to provide timely notice of the forgeries.
*735 There is no dispute that Freytag obtained a credit card in her name on the Avery Interests, L.L.C. credit card account on August 4, 2009. Payments on this | flCredit card accounts were initially made by checks signed by Ducote. In May of 2011, Freytag opened a credit card account in the name of Ducote and obtained a credit card in her name on that account. Payments on this credit card account were made by Freytag contacting Whitney and having funds transferred from the bank account to the credit card account to pay the balance. Freytag also made unauthorized charges on the credit card accounts of Jebaco, Inc., and Iberville Designs. Payments for these charges were made by Freytag contacting Whitney and having funds transferred from the bank account to the respective credit card account to pay the balance. Each time Freytag contacted Whitney to transfer funds from the bank account to pay the credit card balances, Whitney created a debit memo, which was included in the monthly bank statements that were sent to plaintiffs by Whitney. The deposit account agreement between plaintiffs and Whitney provides a 60 day time period for reviewing the statements and notifying Whitney of any unauthorized activities. There is no dispute that plaintiffs never contacted Whitney about unauthorized items. Freytag’s fraudulent scheme was not discovered until late December 2014, when Whitney contacted plaintiffs concerning certain charges on the credit cards.
The evidence presented by Whitney in the Motion for Summary judgment indicates that plaintiffs did not notify Whitney within sixty days of the first unauthorized activity appearing on its bank statement in 2009. Nor did plaintiffs notify Whitney of any unauthorized funds transfers in 2009, 2010, 2011, 2012, 2013, and 2014. It is likewise undisputed that the unauthorized activities were all made by the same alleged wrongdoer, Freytag. Once Whitney established the foregoing facts, it was incumbent upon plaintiffs to come forward with competent evidence that Whitney failed to exercise ordinary care in honoring the checks and funds transfers. Instead, plaintiffs argued that Whitney’s failed to follow its own policies and procedures prior to the funds transfers in the issuance of credit cards, [inPlaintiffs have not come forward with evidence that Whitney failed to exercise ordinary care in honoring the checks signed by Ducote or in transferring funds. Accordingly, we conclude that all of plaintiffs’ claims relating to Freytag’s activities are barred by La. R.S. 10:4-406.
Plaintiffs argue that because the UCC does not provide for rescission, that their cause of action related to rescission of the issuance of credit cards is not barred by the UCC. Plaintiffs contend that Whitney was negligent in its issuance of the credit cards, raising the limits on the credit cards when requested to do so by Freytag, and in changing the address where the credit card statements were sent. Plaintiffs want to rescind the credit card contracts in order to recover the funds transferred from the bank account by Freytag to pay the credit card charges. Plaintiffs have not cited, nor have we found, any cases from any jurisdiction in which a party has sought to rescind fraudulently obtained credit cards. From the record before us, it appears that plaintiffs have not sought any protection that may be available under the laws governing fraudulently obtained credit cards. Instead, plaintiffs attempt to circumvent the obligations placed on them as bank depositors by the UCC to recover funds taken from their bank account that were used to pay fraudulent credit card charges. We are not persuaded by plaintiffs’ arguments.
*736 The UCC does provide a remedy if a customer can prove the bank was negligent in paying an item with funds from a customer’s bank account. La. R.S. 10:406(e) provides that if the customer proves that the bank failed to exercise ordinary care in paying the items and that the failure substantially contributed to the loss, the loss is allocated between the customer and the bank. Thus, the UCC allows a customer to recover in the event the customer proves the bank was negligent in paying an item. Because the UCC provides a remedy to plaintiffs for Whitney’s alleged failure to exercise ordinary care, plaintiffs’ claims against |t1 Whitney which they argue fall outside of the UCC are barred. Plaintiffs failed to prove that Whitney failed to exercise ordinary care in paying the checks that were signed by Ducote or in processing the funds transfers that were used to pay balances on credit cards. The debit memos list the number of the credit card and the amount of the funds transferred to pay each credit card balance. In most instances the name of the person in whose name the credit card was issued was also included on the debit memo. Plaintiffs argue that these credit cards should not have existed. The evidence in the record before us indicates that had plaintiffs examined the debit memos, which were included in every monthly bank statement provided to plaintiffs, plaintiffs would have not only seen that these credit cards existed, they would have seen the fraudulent activity in the bank account.
La. R.S. 10:1-103 instructs that the provisions of Title 10 shall be construed liberally to accomplish the purpose of this law. UCC Comment 2 which follows La. R.S. 10:1-103 explains that UCC preemption “extends to displacement of other law that is inconsistent with the purposes and policies” of the UCC. The rules promulgated by the UCC and adopted by Louisiana represent a delicate balance of interests between the banks and depositors. The comments indicate that the UCC is intended to be an exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by the applicable provisions of the UCC. Our holding that all of plaintiffs’ claims are governed by Title 10 of the Louisiana Revised Statutes in which Louisiana adopted the UCC, is in accordance with the dictates of Title 10 that are to be construed liberally to accomplish the purpose to “simplify, clarify, and modernize the law governing commercial transactions” and “to promote uniformity of the law among the various jurisdictions.”
112PIaintiffs argue that the causes of action related to Whitney’s conduct in issuing the credit cards, raising the limits on the credit cards, and allowing Freytag to change the address where the statements on the credit cards were mailed are separate from the remedy it seeks, which is to be restored to the same position as if the cards had not been issued. However, in order to restore plaintiffs to the position they had been in had the cards not been issued, we would have to ignore plaintiffs’ failure to comply with its own obligation to examine its bank statements and notify Whitney of unauthorized activity. This would be contrary to the stated purpose of the UCC. The comments following La. R.S. 10:1-103 instruct that other principles of law and equity “may not be used to supplant its provisions, or the purposes and policies those provisions reflect” and that UCC preemption “extends to displacement of other law that is inconsistent with the purposes and policies” of the UCC.
Plaintiffs urge this Court to follow the case of Voros v. Dorand, 08-667 (La.App. 6 Cir. 5/26/09), 15 So.3d 1083. In Voros, the plaintiff’s employee contacted the bank and had the bank transfer funds from *737 plaintiffs personal money market account to plaintiffs corporate checking bank account. Plaintiff provided his employee with blank signed corporate checks, which the employee was to use to pay office expenses. Instead the employee used some of these checks to pay his personal bills. In affirming the trial court judgment finding the bank was solidarily liable with plaintiff and the employee, this Court rejected the bank’s argument that this action was governed by La. R.S. 10:3-406 stating that the transfers were not negotiable instruments. Voros can be distinguished from the facts in the instant case because the funds transfers in the instant case fall under the broad definition of “items” defined in La. R.S. 10:4-401. Further, in Voros the defendant argued 10:3-405 and 406 applied and did not assert any defenses under La. R.S. 10:4-406.11sThe facts in the case at bar fall squarely under 10:4-406. For these reasons we find that Voros is not controlling in this case.
Further, our holding is consistent with this Court’s writ disposition in Whitney v. Ducote, 15-256 (La. App. 5 Cir. 4/24/15) (unpublished writ disposition), in which this Court stated that the UCC displaces plaintiffs’ non-UCC claims. Relief was denied at that point in time, because the majority found that defendant had not proved that the bank accounts were covered under La. R.S. 10:4A.[4]
CONCLUSION
For the foregoing reasons, the trial court’s judgment granting Whitney’s Motion for Summary Judgment regarding UCC displacement of plaintiffs’ claims and dismissing plaintiffs’ claims for rescission, negligence, and fraud is affirmed.
AFFIRMED

. Avery Interests, L.L.C., Jebaco, Inc., and Iberville Designs are three of Ducote's numerous business entities.

. A default judgment was entered against Freytag in this matter. Freytag pled guilty to wire fraud and was sentenced to federal prison and restitution ordered for her activities which form the basis of this lawsuit.

. The deposit agreement states in pertinent part: “.. .you further agree that if you fail to provide us written notice of any unauthorized signatures, alterations, or any other problem in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us for any problem reflected in that statement (or in subsequent statements, if the problem is caused by the same wrongdoer), without regard to whether we exercised ordinary care and, as between you and us, the loss will be entirely yours.”

. The parties have since determined that La. R.S. 10:4A is not applicable in this case.