LILJEGERG, J.,
CONCURS IN PART AND DISSENTS IN PART
|UI agree with the majority’s decision to affirm the trial court’s judgment to the extent it dismissed plaintiffs’ claims against defendant, Whitney National Bank, for its conduct relating to the alleged unauthorized funds transfers from Mr. Du-cote’s account by means of checks and debit memos. These transactions are governed by the UCC and the claims arising from these transactions are barred by the terms of the deposit agreement and La. R.S. 10:4-406, due to plaintiffs’ failure to timely contest these transactions. However, I disagree with the majority’s decision to affirm the trial court’s judgment to the extent it determined the UCC and deposit agreement served as a basis to dismiss plaintiffs’ claims arising from Whitney’s alleged failure to follow proper procedures in issuing and handling the credit card accounts at issue. The UCC and deposit agreement do not govern this disputed conduct relating to the credit card accounts. Furthermore, I do not believe these claims .are barred by the UCC merely because plaintiffs seek the return of funds which are also happen to be the subject of the unauthorized funds transfer claims. These are separate transactions which must be analyzed independently under the laws applicable to each set of transactions.
The plain language of La. R.S 10:1-103(b) provides that, “[ujnless displaced by particular provisions of this Title, the other laws of Louisiana supplement its provisions.” [Emphasis added.] Official Comment 2 under this statute provides that the UCC preempts claims which are inconsistent with the UCC and its purpose and policies. However, precedent does not exist to interpret this provision in such a broad manner as to allow the preemption *738 or displacement of claims arising from conduct or transactions which are not governed by the UCC merely because they seek the same remedy. Because the provisions of the UCC do not govern the issuance and handling of credit card accounts, La. R.S. 10:4-406 should not be applied to bar claims arising from these transactions.
In Voros v. Dorand, 08-667 (La.App. 5 Cir. 5/26/09), 15 So.3d 1088, this Court declined to apply similar provisions contained in Chapter 3 of the Louisiana UCC because it did not govern the transactions at issue. This Court determined that a plaintiffs claims for damages arising from his employee’s unauthorized withdrawals of funds from his bank account by means of telephone requests did not involve the use of negotiable instruments; therefore, the provisions set forth in La. R.S. 10:3-405 and 10:3-406 did not apply to bar the plaintiffs claims. Id. at 1087. The defendant bank argued that pursuant to these provisions, an employer who fails to exercise ordinary care in connection with the misappropriation of funds by an employee is barred from asserting claims against a financial institution handling the employer’s account. This Court rejected the bank’s argument on the following grounds:
Chapter 3 of Title 10 of the Louisiana Revised Statutes specifically refers to and is titled “Negotiable Instruments”. Further, the language of both statutes cited by Bank of Louisiana refers to defalcations made by “instrument”. Therefore, we agree with Dr. Voros and find these statutes apply only to acts by an employee dealing with negotiable instruments. Since this case does not deal with negotiable instruments, but instead involves unauthorized telephone transfers of funds from an account, we find these statutes inapplicable in this case.
Id. [5]
Furthermore, La. R.S. 10:l-103(a)(3) provides that “[t]his Title shall be liberally construed and applied to promote its underlying purposes and policies, which are: ... (3) to promote uniformity of law among the various jurisdictions.” The Louisiana Supreme court encourages our courts to examine jurisprudence from other jurisdictions when analyzing the UCC. Specialized Loan Servicing, L.C.C. v. January, 12-2668 (La. 6/28/13), 119 So.3d 582, 588; Cromwell v. Commerce & Energy Bank of Lafayette, 464 So.2d 721, 730 (La. 1985) (“The U.C.C. was adopted in Louisiana in an effort to harmonize the commercial law of | ^Louisiana with that of the other states. We should, therefore, examine the jurisprudence of other states ....”).
In Gilson v. TD Bank, N.A., 10-20535, 2011 WL 294447, 2011 U.S. Dist. LEXIS 7805 (S.D. Fla. Jan. 27, 2011), the plaintiffs alleged the defendant bank was negligent in allowing their investment advisor to open three bank accounts in their names and then use wire transfers to move money into and out of those accounts without their authorization. The bank filed a motion for summary judgment arguing the transactions at issue were wire transfers governed by Article 4A of the UCC, which preempted plaintiffs’ negligence claim. However, the court found that Article 4A of the UCC, which governs only wire transfers, was not applicable to the plaintiffs’ claims arising from the negligent opening of the bank accounts:
Indeed, Plaintiffs’ negligence claim centers on the Bank’s allegedly negligent and reckless conduct with regard to opening the accounts. Plaintiffs’ Second Amended Complaint alleges that TD *739 Bank acted 'with gross negligence and recklessness in numerous ways during the account openings, and the record shows a genuine issue of material fact on this issue. Plaintiffs have come forward with evidence that TD Bank deviated from its standard account opening procedures by not receiving a filing receipt or partnership agreement for G&C. Moreover, Plaintiffs evidence shows that TD Bank failed to notice inconsistencies on the account opening documentation for the G&C accounts, such as the discrepancy between the account address and phone number, which were Stein’s, and Stem’s professed limited role as investment adviser. Because the crux of Plaintiffs’ negligence claim is TD Bank’s lack of care during the account openings, not the wire transfers, the Court finds that the negligence claim does not create rights, duties and liabilities inconsistent with those stated in Article 4A, which governs only wire transfers.
Id. at p. 9, 2011 U.S. Dist. LEXIS 7805 at pp. 27-28.
Furthermore, in Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 222 (4th Cir. 2002), the plaintiff alleged that the bank negligently allowed one of its customers to operate a fraudulent bank account, transfer funds into and out of the account, and negligently failed to train its employees to detect fraud. The court ultimately determined that the plaintiffs negligence claims relating to the wire transfers were preempted, but that the state law claims arising out of alleged 117negligence in allowing the defendant to open the account and failing to train employees to recognize and prevent fraud were not preempted.
The facts before this Court present an even stronger case against the application of the UCC, because this matter does not involve the unauthorized opening of bank accounts and the transfer of funds from those accounts, but rather the opening of credit card accounts and the subsequent transfer of funds from separate banking accounts. This case is unique in that Ms. Freytag both obtained the disputed credit cards from Whitney and then paid the amounts due on these cards with funds from a deposit account held with Whitney. Certainly, if Ms. Freytag had obtained the credit cards from an entity other than Whitney, that entity would not be able to use the terms of Whitney’s deposit agreement or La. R.S. 10:4-406 as a basis to bar plaintiffs’ claims. The UCC does not govern the credit card claims and therefore, allowing these claims to proceed is not inconsistent with the purposes and policies of the UCC. By reaching this conclusion, I do not intend to suggest that plaintiffs are necessarily entitled to the relief sought in their petition, but rather believe these claims must be separately analyzed under laws applicable to the credit card transactions.
I also disagree with the majority’s finding that its holding is consistent with this Court’s earlier writ disposition in this matter, Whitney v. Ducote, 15-526 (La. App. 5 Cir. 4/24/15) (unpublished writ decision). In that writ application, Whitney sought review of the trial court’s denial of its motion for partial summary judgment seeking the dismissal of plaintiffs’ claims arising out of the unauthorized fund transfers. In its decision to deny the writ application, this Court stated as follows:
Applying La. R.S. 10:1-103, the UCC’s general displacement provision, Louisiana courts have consistently held the UCC displaces other remedies where the UCC governs the transaction. See Innovative Hospitality Systems v. Jeff Davis Banchares, 10-509 (La.App. 3 Cir. 12/8/10), 52 So.3d 313, 316; Hardin Compounding Pharm., LLC v. Progressive Bank, 48,397 (La. *740 App. 2 Cir. 9/25/13), 125 So.3d 493; 498; ASP Enters. Inc. v. Guillory and Parish National Bank, 082235 (La. App. 1 Cir. 9/11/09), 22 So.3d 964, 973. While these cases dealt with Chapter 3 of the UCC, the same principle should be applied to Chapter 4A.
[[Image here]]
Whitney Bank carried the burden of showing that there was no genuine issue of material fact as to whether Chapter 4A governs the unauthorized funds transfers.[6]
Id. at p.l. [Emphasis added.]
The writ stemmed from a motion for partial summary judgment with respect to the alleged unauthorized fund transfers, and this Court did not address the preemptive effect of the UCC on plaintiffs’ claims relating to the credit card transactions. Whitney’s summary judgment motion currently before this Court was not a request for a partial judgment, but rather sought the dismissal of all of plaintiffs’ claims.
For these reasons, I respectfully concur in part and dissent in part from the majority’s decision to affirm the trial court’s judgment dismissing all of plaintiffs’ claims against Whitney Bank. I would reverse the trial court’s judgment to the extent it dismissed plaintiffs’ claims arising from the opening and handling of the disputed credit card accounts.

. The Voros court’s analysis was limited to the provisions contained in Chapter 3 of the UCC and did not consider the application of La. R.S. 10:4-406 to the facts in that matter.

. Following discovery, the parties determined that all of the disputed funds transfers were governed by Chapters 3 and 4 of the UCC, rather than Chapter 4A.